UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT
_____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>Plaintiff, | NO. 3:03 CV 418 (PCD) |
| VS. | |
| GLOBAL TELECOM SERVICES, L.L.C. d/b/a<br>MEDICAL DISPOSAL DEVICES,<br>ALBERT D. LATOUCHE AND SALVATORE J.<br>CARTELLI, JR.,<br>        Defendants | MAY 24, 2004 |

**DEFENDANT SALVATORE J. CARTELLI, JR.'S
MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The Defendant, Salvatore J. Cartelli ("Cartelli") moves this Court to deny the Plaintiff's Motion for Summary Judgment because there are genuine issues of material fact in dispute. Contrary to the Plaintiff's argument, the Defendant, Salvatore J. Cartelli, did not engage in fraudulent conduct or make misrepresentations or omissions of material facts in connection with the offer, purchase or sale of a security. Moreover, the Plaintiff is unable to establish that Defendant Cartelli acted with the requisite scienter to be liable under Section 17(a) of the Securities and Exchange Act and Section 10(b) of the Exchange Act and Rule 10b-5.

**II. BACKGROUND**

At no time during the alleged fraudulent offering of securities was Salvatore J. Cartelli was an officer or employee of Global Telecom Services, LLC d/b/a/ Medical Disposal Devices (hereinafter GTS/MDD). The Defendant Albert LaTouche was President of GTS/MDD, which marketed the Needlyzer. (LaTouche Deposition, pages 30, 33).

Sometime in the early 90's, Albert LaTouche entered into the GTS business venture with his partner, Donald Maine, a retired postal worker. (Id., page 32). While Maine ran the "900" telephone number business, LaTouche continued with his full-time job as a dispatcher for a Connecticut fuel oil distributor. (Id., pages 16, 32, 165). When GTS received a proposal from Brian LaTouche to market the Needlyzer, Albert LaTouche sought to recruit a person with some marketing background who could assist GTS with this aspect of the business. (Id., pages 11-12). LaTouche recruited Salvatore Cartelli, a former acquaintance who had experience running several service stations (Id., pages 17-18). Cartelli believed that LaTouche had the legal rights to market the device. Consequently, LaTouche and Cartelli entered into an oral agreement for Cartelli to assist in marketing and selling the Needlyzer. (Id.)

The business plan LaTouche and Cartelli arrived at was for Cartelli to use his sales contacts throughout the United States, as well as his own contacts in the medical field to establish a network for marketing the Needlyzer product overseas. (Id, page 25). Any orders for the Needlyzer that derived from Cartelli would be submitted to Albert LaTouche who would forward the purchase orders to his brother Brian. Brian would then submit the orders to Bob Hall. (Id., pages 26-27). Cartelli would periodically update LaTouche as to the progress of his marketing campaign. Cartelli informed LaTouche of several contacts he had he had made with hospitals and medical supply facilities expressing interest in the product. (Id., pages 27-28).

As the marketing campaign for the Nedlyzer progressed, Cartelli set up official letterhead with the Medical Disposal Device slogan (Don't Get Stuck With Someone Else's Problem) as well as creating a brochure for the product. (Id., pages 34, 50-51, 62-64). He also opened a checking account with Fleet Bank (Id., page 35).

Sometime in approximately 1997, LaTouche began seeking investors into the GTS/MDD business. (Id., page 70). Over time, approximately 40 investors contributed

money to the GTS/MDD venture. (Id., page 71).  Most of the investors were friends or acquaintances of LaTouche. (Id., page 72).  The investors signed contracts that were prepared by Cartelli.  (Id. pages 89-90; 92-97).  At some point in early '98 or '99, Sal Cartelli held a meeting for approximately 10 disgruntled investors who were given the option of having their investment monies returned.  However, after some deliberations, the investors all continued to support the product and remained fully vested in the company.  (Id., pages 75-79).  In April of '98, GTS/MDD began distributing monthly newsletters to its investors to apprise them of the status of their investments (Id., page 110).

Throughout the Needlyzer venture, LaTouche and Cartelli ran the day-to-day operations of the company.

### III. SUMMARY JUDGMENT

"Summary judgment is a procedural device that may be used effectively to bring meritless litigation quickly to an end.  Its application depends upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Gibson v. American Broadcasting Companies, Inc. 892 F.2d 128, 1132 (2d Cir 1989) (internal quotation marks and citations omitted). "[S]ummary judgment will not lie if a dispute about a material fact is 'genuine', that is if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,2510 (1986). "In ruling on a motion for summary judgment, a Court must resolve all ambiguities and inferences from the underlyling facts in favor of the non-moving party."  Levin v. Analysis & Technology, Inc., 960 F.2d 314, 316 (2d Cir. 1992).  "Uncertainty as to the true state of any material fact defeats the motion."  Gibson, supra at 1132.

Defendant Cartelli maintains he did not commit any fraud or deceit towards the investors of the Needlyzer product. As such there are genuine issues of material fact and the Court should deny the Plaintiff's motion.

## IV. ARGUMENT

Plaintiff has failed to establish a sufficient claim for fraudulent conduct committed by Defendant Cartelli in connection with the investments pertaining to MDD and the Needlyzer. Therefore, the Plaintiff's motion for summary judgment against Defendant LaTouche should be denied.

A.  <u>LaTouche's Representations to the Investors were Made Without Any Intend to Deceive</u>

The Plaintiff submits in its memorandum of law in support of its motion for summary judgment that the discovery overwhelmingly establishes that Defendant LaTouche violated federal antifraud provisions. If the Court looks very closely at the entire record, the evidence will establish that Cartelli's name does not appear on any official documents. Only that of LaTouche. As such, the Plaintiff cannot establish one of the necessary elements of fraud, namely, that the Defendant acted with scienter, to support its motion for summary judgment.

The evidence establishes that Cartelli truly believed in the Needlyzer product and was not an officer or employee of LaTouche's business.

If president of GTS, LaTouche did not verify any of the bona fides of the Needlyzer product, that is not Cartelli's fault.

Defendant Cartelli adamantly proclaims his innocence and submits he never intentionally deceived any of LaTouche's investors. Although he assisted in distributing a brochure to the investors about the Needlyzer, he wholeheartedly believed that the information contained therein, to wit, 1) that the device had FDA approval, and 2) that the company owned the patent rights to the product, was truthful and accurate.

There was absolutely no deceitfulness ever committed by Cartelli, at any time, towards the investors. If anyone, LaTouche provided monthly newsletters to the investors to apprise them of the progress the company was making in its marketing efforts overseas. The information that was contained in the newsletters was drafted by LaTouche.

In summary, the Commission wants to penalize Salvatore Cartelli for his role in the unsuccessful business venture concerning the Needlyzer. However, there is absolutely no shred of evidence to establish that Cartelli acted with any intent to deceive or defraud the investors. However, absent a showing that Cartelli acted with scienter, the motion for summary judgment should be denied.

**V. CONCLUSION**

Based on the foregoing, the Court should deny the Plaintiff's motion.

                THE DEFENDANT, SALVATORE CARTELLI, JR.

                BY_____
                    JONATHAN J. EINHORN, ESQ.
                    412 ORANGE STREET
                    NEW Haven, CONNECTICUT 06511
                    TEL. (203) 777-3777
                    FAX  (203 782-1721
                    FEDERAL BAR NO.  ct00163

**CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was mailed, postage prepaid this 24th day of May, 2004 to:

| | |
|---|---|
| William Finkel, Esq. | William Paetzold, Esq. |
| Securities and Exchange Commission | 140 Hebron Avenue |
| 233 Broadway | Glastonbury, CT  06033 |
| New York, New York  10279 | |

                                 _____
                                 JONATHAN J. EINHORN

Case 3:03-cv-00418-PCD    Document 31    Filed 06/01/2004    Page 6 of 6