UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

SECURITIES AND EXCHANGE COMMISSION,   :
                                      :
                Plaintiff,   :   3:03 CV 418 (PCD)
                                      :
        v.                          :   REPLY BRIEF
                                      :   IN SUPPORT
GLOBAL TELECOM SERVICES L.L.C. d/b/a  :   OF PLAINTIFF
MEDICAL DISPOSAL DEVICES,             :   COMMISSION'S
ALBERT D. LATOUCHE and SALVATORE J.   :   MOTION FOR
CARTELLI, JR.,                        :   SUMMARY
                                      :   JUDGMENT
                Defendants.    :
_____:

                                                  WILLIAM FINKEL
                                                  Federal Bar Council No. CT-24904
                                                  Attorney for Plaintiff
                                                  Securities and Exchange Commission
                                                  233 Broadway
                                                  New York, New York 10279
                                                  (646) 428-1716
                                                  (646) 428-1977 (fax)

# **CONTENTS**

INTRODUCTION ..................................................................................................................1

LaTouche Has Not And Cannot Submit Any Admissible Evidence
Demonstrating The Existence Of Any Genuine Issue Of Material Fact .............................2

A.   LaTouche is Precluded From Offering His Own Statements and Other Evidence
     in Opposition to the Motion for Summary Judgment ...............................................2

B.   LaTouche Utterly Failed To Comply With the Court's Rules................................4

LaTouche Has Not Identified Any Specific Facts Showing A Genuine
Issue For Trial ........................................................................................................................5

A.   Reckless Conduct Satisfies The Element Of Scienter ............................................6

B.   LaTouche Acted At The Least Recklessly...............................................................7

     1.   LaTouche Owed a Duty To His Investors ......................................................7

     2.   LaTouche Acted With Scienter When His Company, Medical Disposal,
          Made Material Misrepresentations To Investors ..........................................8

     3.   LaTouche Offered No Evidence of His Personal Investment in Medical
          Disposal...........................................................................................................10

CONCLUSION................................................................................................ 10

# **TABLE OF AUTHORITIES**
## CASES

*Aaron v. SEC*, 446 U.S. 680 (1980)..................................................................................6

*Booze v. Shawmut Bank,* 62 F. Supp.2d 593 (D.Conn.1999) ............................................5

*Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir. 1996)....................................................7

*Coger v. Connecticut*, 2004 WL 547563 (D. Conn. 2004)..................................................5

*Dusanenko v. Maloney,* 726 F.2d 82 (2d Cir.1984)............................................................5

*Ernst & Ernst v. Hochfelder, et al.*, 425 U.S. 185 (1976)...................................................6

*Gabriel Capital, L.P. v. Natwest Finance, Inc.*, 137 F. Supp.2d 251 (S.D.N.Y. 2000).......7

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)..................................................................6

*Ostrowski v. Avery*, 703 A.2d 117 (1997) .................................................................................... 7

*Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38 (2d Cir.1978) ............................... 6

*SEC v. Grossman, et al.*, 887 F. Supp. 649 (S.D.N.Y. 1995), *aff'd, SEC v. Hirshberg*, 1999 App. Lexis 4764 (2d Cir. 1999) ................................................................................ 3

*SEC v. Hirshberg*, 1999 App. Lexis 4764 (2d Cir. 1999) ..................................................... 4

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998) ..................................................................... 6

*SEC v. Softpoint, Inc.*, 958 F. Supp 846 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998) ................................................................................................................................ 4

*United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78 (2d Cir.1995) ............................................................ 3, 4

## STATUTES AND REGULATIONS

15 U.S.C. § 77q(a) ......................................................................................................... 6, 7

15 U.S.C. § 77s(c) ............................................................................................................. 3

15 U.S.C. § 78j(b) ............................................................................................................. 6

15 U.S.C. § 78u(b) ............................................................................................................ 3

17 C.F.R. § 240.10b-5 ...................................................................................................... 6

Conn. Gen. Stat. § 33-765(a) (2003) ................................................................................ 7

Fed. R. Evid. 801 .............................................................................................................. 3

Fed. R. Civ. P. 56(e) ......................................................................................................... 2

Local Civil Rule 56(a) ................................................................................................ 1, 4-5

**INTRODUCTION**

Plaintiff Securities and Exchange Commission ("Commission") submits this reply brief in support of its motion for summary judgment against defendants Global Telecom Services, LLC d/b/a Medical Disposal Devices ("Medical Disposal"), Albert D. LaTouche ("LaTouche") and Salvatore J. Cartelli, Jr. ("Cartelli") (collectively, the "Defendants").

As an initial matter, Defendants Medical Disposal and Cartelli did not submit any opposition to the Commission's motion for summary judgment. Therefore, the Commission's motion for summary judgment should be granted against these defendants.

Although defendant LaTouche filed a memorandum in opposition to the Commission's motion for summary judgment ("Opposition Brief"), LaTouche has not, and cannot, present evidence that raises any genuine issues of material fact disputing the Commission's claims. Specifically, the Court should grant the Commission's motion for summary judgment because: (1) LaTouche asserted his Fifth Amendment privilege during discovery, and he is now precluded from offering his own statement and other evidence in opposition to this motion; (2) LaTouche failed to submit a Local Rule 56(a)2 Statement and therefore the Court should deem admitted all facts set forth in the Commission's Statement pursuant to Local Civil Rule 56(a)1;[1] and (3) LaTouche's own admissions in his Opposition Brief demonstrate that LaTouche, at the least, acted

---

[1] The evidence before the Court on this motion is contained in the exhibits accompanying the Declaration of William Finkel in Support of Plaintiff's Motion for Summary Judgment ("Finkel Dec."), the Declaration of William Finkel in Further Support of Plaintiff's Motion for Summary Judgment ("Finkel Reply Dec.") and in the Commission's Statement Pursuant to Local Civil Rule 56(a)1 ("St.").

recklessly and defrauded Medical Disposal's investors. Accordingly, the Court should grant the Commission's motion for summary judgment in its entirety.

## LATOUCHE HAS NOT AND CANNOT SUBMIT ANY ADMISSIBLE EVIDENCE DEMONSTRATING THE EXISTENCE OF ANY GENUINE ISSUE OF MATERIAL FACT

Summary judgment is appropriate in this matter because LaTouche has not offered any admissible evidence in his Opposition Brief to the Commission's motion for summary judgment. *See* Fed. R. Civ. P. 56(e) (party opposing summary judgment "may not rest upon mere allegations or denials," rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial").

### A.  LaTouche is Precluded From Offering His Own Statements and Other Evidence in Opposition to the Motion for Summary Judgment

During discovery in this action, LaTouche refused to testify at his deposition. Instead, LaTouche chose to assert his Fifth Amendment privilege against self-incrimination to all questions regarding the facts underlying this action. (Finkel Dec., Ex. 9 at ¶ 3). Specifically, LaTouche submitted an affidavit asserting his Fifth Amendment privilege *and* acknowledged that he would continue to assert this privilege at trial.

Because LaTouche asserted his Fifth Amendment privilege, and thus prevented the Commission from obtaining evidence from him during discovery, the Court should preclude LaTouche from now offering his own statements to oppose the Commission's summary judgment motion. Particularly, the Court should not permit LaTouche to offer his statements in the form of testimony which was obtained during the course of investigation that preceded the commencement of this action,[2] in support of those

---

[2]  On April 1, 2002, before this civil action commenced, LaTouche testified pursuant to subpoena in the Commission's investigation entitled *In the Matter of Medical Disposal*

2

positions on which he declined to testify during discovery.[3]  *United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave.*, 55 F.3d 78, 86 (2d Cir.1995) (affirming district court's decision that "prevented [defendant] from submitting 'any material previously claimed to be [covered by his] Fifth Amendment privilege against self- incrimination.'"); *see SEC v. Grossman, et al.*, 887 F. Supp. 649, 660-61 (S.D.N.Y. 1995) (adopting magistrate judge's ruling not to allow defendant who asserted his Fifth Amendment privilege during discovery to consider defendant's SEC investigative testimony taken prior to asserting his Fifth Amendment privilege in response to a summary judgment motion), *aff'd*, *SEC v. Hirshberg*, 1999 App. Lexis 4764 (2d Cir. 1999).

It would simply be unfair to permit LaTouche to use the Fifth Amendment privilege as a shield from discovery, and then introduce his investigative testimony as a substitute for a deposition.  Importantly, LaTouche's investigative testimony took place on April 1, 2002, long before the Commission initiated this action (on March 11, 2003).  On April 1, 2002, the Commission did not have the full understanding of the facts in this matter that it had when, a year and one- half later, it sought LaTouche's deposition.

---

*Devices* (NY-6811).  In his Opposition Brief, LaTouche cites LaTouche's investigative testimony as a "Deposition."  Although LaTouche answered questions under oath and pursuant to an investigative subpoena, it was not a deposition.  The Commission conducted investigative testimony pursuant to Section 19(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77s(c), and Section 21(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78u(b), to investigate possible violations of the federal securities laws.  Depositions in this action were subsequently conducted pursuant to the Federal Rules of Civil Procedure to develop admissible evidence.

[3]   While the statements in LaTouche's investigative testimony offered by LaTouche are hearsay, the Court should accept as admissible evidence those portions of LaTouche's investigative testimony offered by the Commission (Finkel Dec., Ex. 10) because they are admissions by a party opponent.  Fed. R. Evid. 801(d)(2)(A).

3

When LaTouche refused to testify at his deposition and instead asserted his Fifth Amendment privilege on October 10, 2003, he precluded the Commission from, among other things, adequately cross-examining the self-serving assertions he made during his investigative testimony.

When LaTouche chose to assert his Fifth Amendment privilege at his deposition, he fully understood that the Commission would seek to preclude him from offering his own statements to defend against a summary judgment motion. Indeed, in his declaration, LaTouche expressly acknowledged that the Commission would rely on his Fifth Amendment assertion in moving to preclude his testimony. (Finkel Dec., Ex. 9 at ¶¶ 4-5). *See, e.g., SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 857 (S.D.N.Y. 1997) (rejecting defendant's assertion that the Commission will not suffer prejudice by defendant waiving his Fifth Amendment privilege because the Commission took the defendant's investigative testimony prior to litigation), *aff'd*, 159 F.3d 1348 (2d Cir. 1998). Since LaTouche submitted no other evidence besides his own investigative testimony in his opposition, the Court should grant the Commission's summary judgment motion.[4]

**B.    LaTouche Utterly Failed To Comply With the Court's Rules**

Local Civil Rule 56(a)2 provides:

> The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement," which states in separately numbered paragraphs corresponding to the paragraphs

---

[4]    If the party asserting the privilege seeks to waive it at a later stage, the Court considers "the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties in determining an appropriate outcome." *SEC v. Hirshberg*, 1999 App. Lexis 4764 (2d Cir. 1999) (citing *4003-4005 5th Ave.*, 55 F.3d at 84). If "the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege." *Id.*

> contained in the moving party's Local Rule 56(a)1 Statement whether
> each of the facts asserted by the moving party is admitted or denied. The
> Local Rule 56(a)2 Statement must also include in a separate section
> entitled Disputed Issues of Material Fact" a list of each issue of material
> fact as to which it is contended there is a genuine issue to be tried.

Moreover, Local Civil Rule 56(a)3 provided notice to LaTouche that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, . . . when the opponent fails to comply, an order granting the motion." Contrary to the requirements of the Local Rules, LaTouche did not submit *any* Local Rule 56(a)2 Statement in his opposition.[5] Courts may grant summary judgment to a moving party based on the respondent's failure to comply with the local rules. *See Coger v. Connecticut*, 2004 WL 547563 (D. Conn. 2004)(citing *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984); *Booze v. Shawmut Bank*, 62 F. Supp.2d 593, 595 (D.Conn.1999)). Because LaTouche utterly failed to comply with the Local Rules, the Court should deem as admitted all facts set forth in the Commission's Local Rule 56(a)1 Statement of Undisputed Facts, and grant summary judgment for the Commission.

### LATOUCHE HAS NOT IDENTIFIED ANY SPECIFIC FACTS SHOWING A GENUINE ISSUE FOR TRIAL

In his Opposition Brief, LaTouche contends that there is a genuine issue of material fact regarding whether LaTouche intended to deceive investors. LaTouche concedes that Medical Disposal and his partner, Cartelli, made false statements to investors. LaTouche also personally repeated many of these false statements to investors. Despite the fact that LaTouche was President of Medical Disposal and owed a duty to his investors, however, LaTouche contends that he did not act recklessly in putting his "blind

---

[5] By not including a Local Rule 56(a)2 Statement, LaTouche prejudices the Commission by requiring it to decipher LaTouche's Opposition Brief as to which facts in the Commission's Local Rule 56(a)1 Statement, if any, LaTouche disputes.

5

faith" in Cartelli. LaTouche claims he relied on Cartelli's false statements because: (1) whenever LaTouche raised any concerns with Cartelli, Cartelli always produced some supporting documentation to support his claims; and (2) LaTouche evidenced his belief in the legitimacy of Medical Disposal and the company's claims by investing $250,000 of his own money. LaTouche, however, is simply wrong. Even accepting LaTouche's assertions as true, LaTouche's actions were, at the least, reckless.

A.     **Reckless Conduct Satisfies The Element Of Scienter**

To establish liability for violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the Commission must show that LaTouche acted with scienter.[6] *Ernst & Ernst v. Hochfelder, et al.*, 425 U.S. 185, 201 (1976). The Second Circuit has held that reckless conduct satisfies the scienter requirement. *SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir. 1998) (defendant allegedly included false statements in SEC filings despite "the obviously evasive and suspicious statements made to him" by the corporate officials upon whom he was relying for this information and despite outside counsel's recommendation that these statements not be included.); *Novak v. Kasaks*, 216 F.3d 300, 308-09 (2d Cir. 2000) (conduct which is "highly unreasonable" and which represents "an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (citing *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 47 (2d Cir.1978) (citation omitted)). Moreover, "'[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness.'" *Chill v. General Elec. Co.,* 101 F.3d 263,

---

[6]     Negligent conduct is sufficient to establish violations of Section 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3). *See Aaron v. SEC*, 446 U.S. 680, 695-97 (1980).

6

269 (2d Cir. 1996) (citation omitted).  Moreover, officers of companies act at the least recklessly by repeating assertions made to them without doing in depth due diligence. *Gabriel Capital, L.P. v. Natwest Finance, Inc.*, 137 F. Supp.2d 251, 262 (S.D.N.Y. 2000) ("Obviously, corporations and their officers and directors have a duty not to disseminate statements that are 'obviously suspicious' . . .").

**B.    LaTouche Acted At The Least Recklessly**

    **1.    LaTouche Owed a Duty to his Investors**

In Connecticut, the state where Medical Disposal was incorporated and conducted business, officers and directors have a fiduciary relationship to the corporation and to its investors.  *C.f. Ostrowski v. Avery*, 703 A.2d 117, 121-122 (1997) (officers have fiduciary duty to minority shareholders).  Moreover, an officer has the duty to 1) act in good faith; 2) exercise prudent care; and 3) act in the best interest of the corporation.  Conn. Gen. Stat. § 33-765(a) (2003).  Here LaTouche was the President of Medical Disposal -- the most senior officer in the company.  LaTouche had an obligation to investigate the claims Medical Disposal was making to investors and ensure that these claims were accurate. Medical Disposal made numerous claims about its business operations: Medical Disposal owned the patent for its only product-- the Needlyzer; the Needlyzer was approved by the Food and Drug Administration ("FDA"); Medical Disposal had the ability to manufacture the Needlyzer; and Medical Disposal entered into numerous contracts to sell the Needlyzer.  To the extent LaTouche was relying on Cartelli's claims that these statements were true, he had an obligation to investigate the veracity of Cartelli's claims to ensure LaTouche was comfortable the claims were true before personally making, and permitting Medical Disposal to make, these claims to investors when selling securities.  If

LaTouche had exercised a minimum amount of due diligence, he would have learned that Cartelli was lying.

### 2. LaTouche Acted With Scienter When his Company, Medical Disposal, Made Material Misrepresentations to Investors

LaTouche, the President of Medical Disposal, acted knowingly or recklessly when he and Medical Disposal made numerous misrepresentations to investors. Importantly, the Commission need only show that LaTouche knowingly or recklessly made *one* material misrepresentation to induce investors to purchase securities to establish that he violated the antifraud provisions. Specifically, LaTouche had reason to doubt Cartelli's claims that the FDA had approved the Needlyzer; that Medical Disposal owned the patent rights to the Needlyzer; and claims that Medical Disposal had sold Needlyzers in foreign countries.

Specifically, LaTouche did not dispute any of the following facts:

- LaTouche's brother told LaTouche that Medical Disposal did not have a contract for the Needlyzer's patent rights. (St. § 56).

- LaTouche's brother told LaTouche that the Needlyzer was not approved by the FDA and there were no pending requests for FDA approval of the Needlyzer. (St. §§ 57, 67).

- LaTouche's brother told LaTouche that he should not believe Cartelli's stories of deals with foreign companies. (St. § 122).

- Cartelli gave LaTouche documents, such as a document indicating the Vatican endorsed the Needlyzer, that were forgeries on their face. (St. § 108, Finkel Dec., Ex. 28).

- LaTouche's brother told LaTouche that the pending deals Cartelli mentioned were "bogus." (St. § 123).

8

- LaTouche began having doubts about the veracity of Cartelli's statements around August 1999, which was eleven months before he solicited his last investment. (St. § 158).

Additionally, in his Opposition Brief, LaTouche admitted that he "does not contest the fact that he failed to independently verify any of the information that Cartelli provided to him about his progress in marketing the Needlyzer." (Opposition Brief, p. 6). Still, LaTouche permitted Medical Disposal to make these claims, and he personally repeated these claims to investors.

Moreover, in his Opposition Brief, LaTouche implicitly admitted that he knew his statements to investors regarding FDA approval of the Needlyzer and Medical Disposal's patent ownership were false. LaTouche admitted that he understood Cartelli *could get* FDA "approval within 30 days." (Opposition Brief, pp. 3, 7). Nonetheless, LaTouche told investors that the Needlyzer was FDA *approved*. (St. § 88). LaTouche also admitted that he believed Cartelli's claim that Attorney Faber said that nobody could establish exclusive ownership of the Needlyzer's patent rights. (Opposition Brief, pp. 3, 7). Nonetheless, LaTouche told investors Medical Disposal *acquired* the patent rights to the Needlyzer. (St. § 89).

LaTouche's fraudulent or at least reckless intent is also evident by his additional admissions in his Opposition Brief. For example, LaTouche admitted he: "may have had a 'pie in the sky' dreams of financial success . . . [and] placed his blind trust in Cartelli." LaTouche also admitted that his "unbridled belief in Cartelli may have been foolish and totally naïve." (Opposition Brief, p. 6). It is certainly reckless for Medical Disposal's President to act "totally naïve" and place "blind trust" in Cartelli, especially when (i) LaTouche's brother had warned LaTouche about Cartelli (St. §§ 122-123) and (ii) the

documents Cartelli showed LaTouche were obvious forgeries. (St. §§ 108, 110 and Finkel Dec., Ex. 28).[7]

### 3. LaTouche Offered No Evidence of His Personal Investment in Medical Disposal

Finally, LaTouche asserted that his $250,000 investment shows that LaTouche believed in his company and did not believe the company was misleading investors. (Opposition Brief, pp. 3, 6). LaTouche, however, offered no evidence of his $250,000 investment (other than his inadmissible investigative testimony). During the Commission's investigation, the Commission staff subpoenaed documents from LaTouche concerning Medical Disposal. (Finkel Reply Dec., § 2). Despite producing approximately 300 hundred pages of documents, LaTouche did not provide any documents reflecting his investment of $250,000. (Finkel Reply Dec., §§ 4-5). It is inconceivable that LaTouche invested that much money in Medical Disposal yet had no documents evidencing the investment. Moreover, LaTouche's purported investment of $250,000 in the company does not excuse the fact that Medical Disposal and LaTouche made numerous material misrepresentations to other investors.

## CONCLUSION

For the reasons stated, the Commission respectfully requests that the Court grant

---

[7] LaTouche also claims that his reliance on Cartelli was reasonable because Cartelli was very persuasive and he convinced at least ten investors not to withdraw their investment in Medical Disposal. (Opposition Brief, pp. 4, 7). LaTouche misses the point. Cartelli's ability to dupe investors is irrelevant to an assessment of whether LaTouche acted knowingly or recklessly. LaTouche, as President of Medical Disposal: (i) had an obligation to perform due diligence regarding Medical Disposal's and Cartelli's statements to investors; (ii) knew that Medical Disposal did not have FDA approval or patent ownership of the Needlyzer; (iii) heard LaTouche's brother's warnings about Cartelli's "bogus" deals; and (iv) had seen Cartelli's obviously forged documents.

summary judgment on all claims against the Defendants and issue a final judgment.


Dated: New York, New York
June 1, 2004

                                                _____

WILLIAM FINKEL
Federal Bar Council No. CT-24904
Attorney for Plaintiff
Securities and Exchange Commission
233 Broadway
New York, New York 10279
(646) 428-1716
(646) 428-1977 (fax)

11